Lenard E. Schwartzer
Nevada Bar No. 0399
Emelia L. Allen
Nevada Bar No. 11898
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Proposed* Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re:<br><br>CIMMARON SQUARE ROT, LLC,<br><br>Debtor. | Case No. BK-S-10-34253-LBR<br>Chapter 11<br><br>**EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL ON AN INTERIM AND CONTINUING BASIS**<br><br>Date: OST Requested<br>Time: OST Requested |
|---|---|

CIMMARON SQUARE ROT, LLC, the debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case, by and through undersigned proposed counsel and pursuant to 11 U.S.C. § 363, hereby files this Emergency Motion For An Order Authorizing The Use Of Cash Collateral On An Interim And Continuing Basis ("Motion"). Pursuant to Bankruptcy Rules 4001(b) and (d), the principal provisions of the Motion are as follows:

| Provision | Contained In Motion | Location in Motion |
|---|---|---|
| (1) Name of each entity with an interest in cash collateral:<br>   a) Inland Mortgage Capital Corporation | __X__ Yes<br>____ No | Page _3_, ¶ _3_ |
| (2) The purpose for the use of cash collateral:<br><br>   To maintain the Debtor's shopping center and the operations of the Debtor. | __X__ Yes<br>____ No | Page _3_, ¶ _4_ |

| Provision | Contained In Motion | Location in Motion |
|---|---|---|
| (3) Material terms of use of cash collateral, including duration of cash collateral:<br><br>Duration: 6 months or plan confirmation | __X__ Yes<br>_____ No | Page _4_, ¶¶ 9-12 |
| (4) Any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in cash collateral:<br><br>Monthly payments to Inland Mortgage Capital Corporation and replacement liens. | _____ Yes<br>__X__ No | Page _4_, ¶ _12_ |

As set forth in the Motion, the Debtor respectfully requests that this Court enter an order authorizing the use of cash collateral on an interim and continuing basis. **The Debtor seeks leave to utilize the Rents generated by its shopping center (the "Rents") to maintain the Shopping Center, payment of management services and expenses, for payment of common area maintenance expenses, property taxes, liability insurance premiums, landlord expenses incurred by the shopping center, and for no other purposes. The balance of the Rents collected will be segregated and <u>not</u> used for other purposes.**

This Motion is made and based upon the Points and Authorities set forth herein, the Declaration of Charles J. Rotkin (the "Rotkin Declaration") filed concurrently herewith, and the oral arguments of counsel the Court may wish to entertain at a hearing on the Motion, if any.

## POINTS AND AUTHORITIES

### FACTS

1. On December 31, 2010 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor is operating its business and managing its affairs as debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. The Debtor is the co-owner of an existing shopping center situated in an upscale neighborhood retail center within the master planned community of Mountains Edge and in the Southwest portion of the valley (the "Shopping Center"). The Debtor and each of its two co-

owners have filed Chapter 11 cases in this Court. The Shopping Center is located at the southwest corner of the intersection of Blue Diamond Road and Cimarron Road on a site of 2.74 acres, zoned for Commercial Neighborhood Shopping. There are 4 separate buildings constructed in 2008 having Net Leaseable space of 35,068 sq.ft. 25,412 sq.ft. (approximately 72%) are currently leased.

3. By an Installment Note dated February 15, 2007[1] between Debtor, its co-owners and Inland Mortgage Capital Corporation ("Secured Creditor"), Debtor its co-owners granted Secured Creditor a security interest in, among other things, the Rents Debtor collects. Accordingly, the monthly Rents collected from the tenants of the Shopping Center constitute the Secured Creditor's cash collateral ("Cash Collateral"). The Shopping Center's tenant roster is attached hereto as **Exhibit "1."**

4. The Debtor and its co-owners request authority to use the Secured Creditor's Cash Collateral pursuant to 11 U.S.C. § 363 to **maintain the Shopping Center, payment of management services and expenses, for payment of common area maintenance expenses, property taxes, liability insurance premiums, landlord expenses incurred by the shopping center, and for no other purposes**. The balance of the Rents collected will be segregated.

5. The Debtor's and its co-owners' anticipated revenues and expenses over the next several months are attached in the Budget as **Exhibit "2"** and are incorporated by this reference.

6. It is essential to the continued operation of the Shopping Center for the Debtor and its co-owners to have the ability to utilize the Cash Collateral to maintain the Shopping Center. There is no realistic source of liquidity to operate the Shopping Center other than the income generated by the tenants of the Shopping Center.

7. Allowing the Debtor and its co-owners to continue to operate the Shopping Center protects and preserves the shopping center's reputation with its current and prospective tenant and allows the Debtor and its co-owners to exist and attempt to reorganize its debt. Doing so allows

---

[1] The Debtor notes that it hereby reserves any rights to dispute the amount, validity and priority of any of the deeds of trust and assignments of rents.

the Debtor and its co-owners to maximize the value of the shopping center based upon operating performance that will allow the Debtor and its co-owners to maintain its "going concern value."

8. Conversely, refusing to allow the Debtor and its co-owners to operate the Shopping Center by barring use of the Cash Collateral will result in the immediate termination of operations and catastrophic decline in the Shopping Center's value.

9. The anticipated Rents and expenses for the Shopping Center over the next 6 months are expected to be more than sufficient to pay for the maintenance expenses, property tax and insurance expenses, and landlord expenses which include debt service, incurred by the Shopping Center.

10. Allowing the Debtor and its co-owners to continue to use the Rents to maintain the Shopping Center will provide time for the Debtor and its co-owners to attempt to reorganize its debts.

11. The Shopping Center is properly insured.

12. With respect to adequate protection, the Debtor and its co-owners will not make the regular monthly payment to Secured Creditor. The Debtor will retain funds in excess of operating expenses in a Debtor In Possession account which will not be used for any purpose except operating expenses, except with the approval of the Secured Creditor or upon an order of this court. Moreover, the Secured Creditor is protected by a replacement lien under 11 U.S.C. § 361 in proceeds of the same postpetition collateral, to the extent that: 1) the Secured Creditor's prepetition interest is valid and nonavoidable, and 2) prepetition cash and proceeds are utilized by the Debtor and its co-owners in this case. The priority of this replacement lien will be the same as its prepetition priority.

13. Accordingly, the Secured Creditor should approve the use of Cash Collateral with ordinary monthly operating reporting and ordinary replacement liens. If the Secured Creditor does not consent, the Debtor and its co-owners ask the Court to grant this Motion over the Secured Creditor's objection. Absent authorization to use cash collateral, the Debtor and its co-owners will have insufficient cash available to maintain the Shopping Center and preserve the value of the Debtor's estate.

14. By making this Motion, the Debtor and its co-owners are not waiving: (a) the right to dispute the issue of what portion, if any, of its funds are cash collateral or the right to dispute the debt or lien of any creditor, (b) the right to seek Court authority to compensate professionals retained by the estate, (c) any rights to surcharge any collateral, (d) any rights to challenge the extent, priority or validity of any lien secured by the business, or (e) any right to avoid any lien secured by the business pursuant to 11 U.S.C. §§ 542 to 551.

15. Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only ... as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).

16. The Ninth Circuit Court of Appeals has recognized that immediate interim relief may be crucial to the success of a corporate reorganization:

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is a perilous process, seldom more so that at the outset of the proceeding when the debtor is often without sufficient cash flow to fund a central business operation. *In re Sullivan Ford Sales*, 2 B.R. 350; 355 (Bankr. D. ME 1986). It is for this reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.' 11 U.S.C. §363(c)(3).

*In re Center Wholesale, Inc.*, 795 F.2d 1440, 1449 n 21 (9th Cir. 1985).

17. Because the Debtor's cash needs are immediate and absent satisfying those needs, the Debtor will be forced to terminate maintenance of the Shopping Center and minimizing the potential value of its estate for creditors, the Debtor has demonstrated "immediate and irreparable" harm to the estate absent emergency consideration of the relief requested in this Motion.

18. The Debtor and its co-owners assert that the value of the Shopping Center is approximately the same as the debt to the Secured Creditor. This is not a case where the property is far "under water" and there is no realistic possibility of reorganization.

/ / /

/ / /

## NOTICE

### Notice With Respect to Interim Hearing

19. The Debtor will provide a copy of the Motion and the Notice of Hearing by e-mail and notice of the hearing by telephone to counsel for the Secured Creditor and by mail to all other interested parties.

### INTERIM RELIEF REQUESTED

### (Expedited Hearing Requested)

20. Within the meaning of F.R.B.P. 4001(b)(2), the court may conduct a final hearing on a motion for authority to use cash collateral no earlier than fourteen (14) days following service of the Motion, but if requested, the Court may conduct an interim hearing within such interim period and authorize credit to the extent necessary to avoid imminent and irreparable harm to the estate pending a final hearing. Without the use of the cash collateral, the Debtor may be in danger of not being able to immediately meet its liquidity needs, jeopardizing the going concern value of the Shopping Center. If the Debtor and its co-owners are able to use the cash collateral, then the Debtor and its co-owners believe they will be able to continue to maintain the Shopping Center through confirmation of a plan of reorganization or liquidation.

21. The Debtor respectfully requests that this Court conduct an expedited interim hearing and authorize the use of the cash collateral as requested herein.

### FINAL HEARING REQUESTED

22. The Debtor respectfully requests an interim hearing by the Court, on an emergency basis, to be followed by a final hearing not less than fourteen (14) days thereafter.

### STATEMENT OF EXIGENT CIRCUMSTANCES

23. The Debtor requests that the interim hearing requested herein be considered on an emergency basis because the relief requested is critical to the administration of its estate and to the operation and maintenance of the Shopping Center.

### Memorandum of Law

11 U.S.C. § 363(c)(2) provides that:

> The Trustee may not use, sell, or lease cash collateral under paragraph 1 (of

> this subsection) unless-
>
> (A) Each entity that has an interest in such cash collateral consents; or
> (B) The Court, after notice in a hearing, authorizes such use, sale, or lease in accordance with the provisions of this Section.

Assuming a debtor-in-possession or trustee requires court authorization for use of cash collateral, then 11 U.S.C. § 361 provides, in pertinent part, as follows:

> When adequate protection is required under Sections 362, 363, or 364 of this Title of an interest of an entity in property, such adequate protection may be provided by:
>
> . . .
>
> (2) Providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entities' interest in such property...

11 U.S.C. § 363(e) provides that, upon request of an entity that has an interest in property to be used by a debtor, the court "shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." *Id*.

Courts have considered "adequate protection" a concept which is to be decided flexibly on the proverbial "case-by-case" basis. *In re O'Connor*, 808 F.2d 1393, 1397 (*citing In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Monroe Park*, 17 B.R. 934 (D.C. Del. 1982)).

"Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact." *Id*. (*citing In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). In order to encourage the Debtor's efforts in the administration period prior to the proposal of a reorganization plan, the court should be flexible in applying the adequate protection standard. *O'Connor*, 808 F.2d at 1398 (*citing Martin*, 761 F.2d at 476). In doing so, however, care must be exercised to ensure that the vested property rights of the secured creditor are not eroded, and the values and risks bargained for by that creditor prior to bankruptcy are not detrimentally affected. *Id*.

The Debtor submits that the use of the Cash Collateral solely for the maintenance of the Shopping Center, utilities, insurance premiums, real estate taxes and fees is in the best interest of the Secured Creditor, the tenants of the Shopping Center, and the estate. The use of the Cash

Collateral will allow the Debtor and its co-owners to continue to fund the operation of the Shopping Center in the ordinary course, and preserve and enhance the value of the Shopping Center for the benefit of the Secured Creditor and the estate.

Under the circumstances set forth herein, the granting of the relief requested by this Motion is warranted. The Secured Creditor's lien position is best protected by the maintenance of the Shopping Center, the retention of the tenants, and by virtue of the replacement lien in the post-petition Rents and its liens on the property.

## CONCLUSION

In consideration of the foregoing, Debtor respectfully requests that the Court (i) set an emergency hearing, (ii) enter the proposed Interim Order permitting the interim use of cash collateral on the terms and conditions set forth therein, (iii) set a hearing date for entry of a final order permitting the use of cash collateral, and (iv) grant such other relief as the Court deems appropriate.

Pursuant to LR 9021, a proposed form of order is attached as **Exhibit "3."**

Dated this _____ day of December, 2010.

_/s/ Lenard E. Schwartzer_____
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Proposed Attorneys for Debtor and
Debtor in Possession

# EXHIBIT "1"

# Commercial Report: Tenant Roster
## 3-Dec-10
### PM 0080 Blue Diamond Partners, LLC / Cimarron Square

| Unit | Unit Type | Space | UofM | Current Tenant | Lease Starts | Lease Ends | BaseRent | Recovery | Other | Total | Option | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9265-100 | Ret | 1,171.00 | SQFT | SUBWAY REAL ESTATE CORP. | 05/15/2009 | 09/30/2014 | 3,618.39 | 458 | -- | 4,076.39 | 5-yr | |
| 9265-105 | Ret | 2,529.00 | SQFT | KWIK-E MART | 1/15/2011 | 1/31/2016 | 6,000.00 | 986 | -- | 6,986.00 | | 1st mo Rent prepaid |
| 9265-115 | Ret | 2,100.00 | SQFT | Vacant | | | | | | -- | | Current concession runs through 2/28/11 |
| 9285-100 | Ret | 2,100.00 | SQFT | INAKA SUSHI | 07/14/2008 | 07/31/2013 | 5,376.00 | -- | -- | 5,376.00 | 5-yr | |
| 9285-105 | Ret | 1,300.00 | SQFT | PAPA JOHN'S PIZZA | 06/14/2008 | 06/30/2013 | 4,482.30 | 549 | -- | 5,031.30 | 5-yr | |
| 9285-110 | Ret | 1,500.00 | SQFT | LEGENDS 6 CLEANERS | 05/10/2009 | 11/30/2014 | 4,480.00 | 587 | 80 | 5,147.00 | 5-yr | 12/10 Rent is free per original Lease Rent renegotiated; CAM waived through 12/31/10 |
| 9285-115 | Ret | 1,500.00 | SQFT | FANTASTIC NAILS | 06/14/2008 | 06/30/2013 | 3,000.00 | -- | -- | 3,000.00 | 5-yr | |
| 9285-120 | Ret | 3,200.00 | SQFT | PACIFIC DENTAL SERVICES, INC. | 06/14/2008 | 06/30/2018 | 10,720.00 | 1,198.00 | -- | 11,918.00 | 5-yr | |
| 9325-100 | Ret | 3,533.00 | SQFT | SNAP FITNESS | 05/23/2008 | 09/30/2013 | 7,066.00 | 934 | -- | 8,000.00 | 5-yr | |
| 9325-115 | Ret | 1,200.00 | SQFT | Vacant | | | -- | -- | -- | -- | | |
| 9325-120 | Ret | 2,832.00 | SQFT | Vacant | | | -- | -- | -- | -- | | |
| 9325-135 | Ret | 2,240.00 | SQFT | Vacant | | | -- | -- | -- | -- | | |
| 9325-140 | Ret | 2,923.00 | SQFT | BARKING DOGS SELF-WASH | 06/01/2010 | 01/10/2015 | 7,307.50 | 1144.91 | -- | 8,452.41 | 5-yr | |
| 9345-100 | Ret | 3,012.00 | SQFT | MIZ LOLA'S SPIRITS & GAMING | 2/1/2011 | 1/31/2017 | 7,530.00 | 1,114.44 | -- | 8,644.44 | | 1st mo Rent prepaid Rent & CAM concession through 4/30/11 |
| 9345-110 | Ret | 1,300.00 | SQFT | POPPY'S FROZEN YOGURT | 12/15/2009 | 12/31/2014 | 3,150.00 | -- | -- | 3,150.00 | 5-yr | |
| 9345-115 | Ret | 1,753.00 | SQFT | Vacant | | | -- | -- | -- | -- | | |
| 9345-120 | Ret | 1,475.00 | SQFT | PATTY'S CLOSET | 07/13/2008 | 07/31/2013 | 5,476.90 | 578 | -- | 6,054.90 | 5-yr | |
| PAD | Ret | -- | SQFT | NEVADA STATE BANK (CAM ONLY) | 06/01/2008 | | -- | -- | -- | -- | | |
| | | 35,668.00 | | Total floor | | | 68,207.09 | 7,549.35 | 80.00 | 75,836.44 | | |
| | | 25,543.00 | | Total occupancy | 72% | | 68,207.09 | 7,549.35 | 80.00 | 75,836.44 | | |
| | | 10,125.00 | | Total vacancy | 28% | | | | | | | |
| | | 35,668.00 | | Total project | 100% | | 68,207.09 | 7,549.35 | 80.00 | 75,836.44 | | |

# EXHIBIT "2"

CIMARRON SQUARE
BUDGET WORKSHEET
2011 BUDGET

12/23/2010

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL | TOTAL PSF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | | |
| BASE RENT | $ 62,531 | $ 69,309 | $ 62,001 | $ 65,096 | $ 69,309 | $ 64,937 | $ 71,673 | $ 71,670 | $ 71,887 | $ 71,887 | $ 71,887 | $ 71,887 | $ 824,075 | $23.19 |
| COMMON AREA | $ 14,599 | $ 14,599 | $ 14,599 | $ 11,670 | $ 14,599 | $ 14,599 | $ 14,599 | $ 14,599 | $ 14,599 | $ 14,599 | $ 14,599 | $ 14,599 | $ 172,261 | $4.34 |
| NSB QUARTERLY CAM | $ 2,262 | $ - | $ - | $ 2,728 | $ - | $ - | $ 2,728 | $ - | $ - | $ 2,728 | $ - | $ - | $ 10,447 | |
| Less Vacancy/Concession | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (4,143) | $ (49,720) | |
| **TOTAL INCOME** | $ 75,249 | $ 79,765 | $ 72,457 | $ 75,351 | $ 79,765 | $ 75,393 | $ 84,858 | $ 82,126 | $ 82,343 | $ 85,071 | $ 82,343 | $ 82,343 | $ 957,063 | |
| **COMMON AREA MAINTENANCE EXPENSES** | | | | | | | | | | | | | | |
| ELECTRICITY | $ 1,300 | $ 1,300 | $ 1,300 | $ 1,300 | $ 1,300 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 1,300 | $ 1,300 | $ 1,300 | $ 18,400 | 0.46 |
| GARBAGE/TRASH REMOVAL | $ 4,712 | $ 680 | $ 680 | $ 4,712 | $ 680 | $ 680 | $ 4,712 | $ 680 | $ 680 | $ 4,712 | $ 680 | $ 680 | $ 24,293 | 0.61 |
| PORTER SERVICE | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 9,000 | 0.23 |
| PARKING LOT SWEEPING | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 7,200 | 0.18 |
| LANDSCAPING CONTRACT | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 525 | $ 6,300 | 0.16 |
| LANDSCAPING EXTRAS | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 0.00 |
| PEST CONTROL | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ 1,068 | 0.03 |
| GENERAL MAINTENANCE | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 3,000 | 0.08 |
| PARKING LOT REPAIRS | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 1,200 | 0.03 |
| PARKING LOT STEAM CLEANING | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 533 | $ 6,390 | 0.16 |
| AWNINGS/WINDOWS | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 1,200 | 0.03 |
| LIGHT BULBS & FIXTURES | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 600 | 0.02 |
| FIRE/LIFE SAFETY | $ 560 | $ 560 | $ 220 | $ 560 | $ 220 | $ 220 | $ 560 | $ 220 | $ 220 | $ 560 | $ 220 | $ 220 | $ 4,000 | 0.10 |
| **TOTAL** | $ 9,569 | $ 5,197 | $ 5,197 | $ 9,569 | $ 5,197 | $ 5,897 | $ 10,269 | $ 5,897 | $ 5,897 | $ 9,569 | $ 5,197 | $ 5,197 | $ 82,651 | 2.08 |
| **PROPERTY TAX & INSURANCE EXPENSE** | | | | | | | | | | | | | | |
| PROPERTY TAXES | $ 11,697 | $ - | $ 11,697 | $ - | $ - | $ - | $ - | $ 11,697 | $ - | $ 11,697 | $ - | $ - | $ 46,789 | 1.32 |
| LIABILITY INSURANCE | $ 2,486 | $ 943 | $ 943 | $ 943 | $ 943 | $ 943 | $ 943 | $ 943 | $ 943 | $ 943 | $ 943 | $ - | $ 10,976 | 0.28 |
| **TOTAL** | $ 14,184 | $ 943 | $ 12,641 | $ 943 | $ 943 | $ 943 | $ 943 | $ 12,640 | $ 943 | $ 12,640 | $ - | $ - | $ 57,765 | 1.63 |
| **TENANT REIMBURSABLE EXPENSES** | | | | | | | | | | | | | | |
| SEWER | $ 2,309 | $ - | $ - | $ 2,309 | $ - | $ - | $ 2,759 | $ - | $ - | $ 2,309 | $ - | $ - | $ 9,687 | 0.27 |
| WATER | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 800 | $ 800 | $ 800 | $ 11,200 | 0.28 |
| GREASE TRAP EXPENSES | $ - | $ 250 | $ - | $ - | $ 250 | $ - | $ - | $ 250 | $ - | $ - | $ 250 | $ - | $ 1,000 | 0.29 |
| ROOF REPAIRS | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 1,200 | 0.03 |
| **TOTAL** | $ 3,209 | $ 1,150 | $ 900 | $ 3,209 | $ 1,150 | $ 1,300 | $ 4,059 | $ 1,550 | $ 1,300 | $ 3,209 | $ 1,150 | $ 900 | $ 23,087 | 0.58 |
| **TOTAL OPERATING EXPENSE** | $ 26,962 | $ 7,290 | $ 18,738 | $ 13,721 | $ 7,290 | $ 8,140 | $ 15,271 | $ 20,087 | $ 8,140 | $ 25,418 | $ 6,347 | $ 6,097 | $ 163,503 | |
| **NOI** | $ 48,287 | $ 72,474 | $ 53,719 | $ 61,630 | $ 72,474 | $ 67,252 | $ 69,586 | $ 62,039 | $ 74,203 | $ 59,653 | $ 75,996 | $ 76,246 | $ 793,560 | |
| **LANDLORD EXPENSES** | | | | | | | | | | | | | | |
| VACANT STE EXPENSE | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 6,000 | |
| TENANT IMPROVEMENT LEASING COMMISSION IMPOUND ACCOUNT | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 120,000 | |
| MANAGEMENT FEES | $ 2,257 | $ 2,393 | $ 2,174 | $ 2,261 | $ 2,393 | $ 2,262 | $ 2,546 | $ 2,464 | $ 2,470 | $ 2,552 | $ 2,470 | $ 2,470 | $ 28,712 | |
| LONG DISTANCE | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 48 | |
| POSTAGE & OVERNIGHT MAIL | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 70 | $ 840 | |
| OTHER - COPIES, DEP BOOKS, ETC | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 246 | $ 2,954 | |
| **TOTAL LANDLORD EXPENSE** | $ 13,078 | $ 13,213 | $ 12,994 | $ 13,081 | $ 13,213 | $ 13,082 | $ 13,366 | $ 13,284 | $ 13,290 | $ 13,372 | $ 13,290 | $ 13,290 | $ 158,554 | |
| **CASH FLOW** | $ 35,210 | $ 59,261 | $ 40,726 | $ 48,549 | $ 59,261 | $ 54,170 | $ 56,220 | $ 48,755 | $ 60,912 | $ 46,281 | $ 62,706 | $ 62,956 | $ 635,006 | |

# EXHIBIT "3"

Lenard E. Schwartzer
Nevada Bar No. 0399
Emelia L. Allen
Nevada Bar No. 11898
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Proposed* Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No. BK-S-10- |
|---|---|
| CIMMARON SQUARE ROT, LLC, | Chapter 11 |
| Debtor. | **INTERIM ORDER AUTHORIZING THE USE OF CASH COLLATERAL** |
| | Date:<br>Time: |
| | Final Hearing Date:<br>Final Hearing Time: |

    The Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim and Continuing Basis (the "Motion") having come before this Court pursuant to an Order Shortening Time, the Order Shortening Time and Motion having been served as shown by the Certificate of Service, there being no opposition, Inland Mortgage Capital Corporation (the "Secured Creditor") being represented by Bob Olson, Esq. of Greenberg Traurig, the Court having reviewed the Motion and finding good cause, it is

    **ORDERED** that the Debtor is authorized to use the rents generated by its shopping center

(the "Shopping Center") to maintain the Shopping Center, for payment of maintenance expenses, real estate taxes, insurance premiums, and utilities incurred by the Shopping Center and for no other purposes as stated in the budget provided to the Court (and up to 10% more in any given month), a copy of which is attached hereto as **Exhibit "1;"** and it is further

**ORDERED** that to the extent items exceed the budget by more than 10%, the Debtor may pay such expenses if it has permission from Secured Creditor; and it is further

**ORDERED** that Secured Creditor has a replacement lien in cash collateral; and it is further

**ORDERED** that a final hearing on the Motion will be held on _____ at _____.

Submitted by:

_____
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas, NV 89146
*Proposed Attorneys for Debtor and Debtor in Possession*

Approved by:

_____
Bob Olson, Esq,
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, NV 89169
Tel: (702) 938-6947
*Attorneys for Inland Mortgage Capital Corporation*

1  In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:
2

3  _____ The court has waived the requirement set forth in LR 9021 (b)(1).

4  _____ No party appeared at the hearing or filed an objection to the motion.

5  __X__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.
6

7  _____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.
8

9                                                            ###

p:\blue diamond partners\cash collateral motion\interim order re motion to use cash collateral.doc        Page 3 of 3

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122